# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 6849 | **DATE** | December 10, 2012 |
| **CASE TITLE** | | *SEC v. Amella* | |

**DOCKET ENTRY TEXT:**

The SEC's motion for entry of final judgment [47] is granted. The clerk shall place Mr. Hayden's 11/19/2012 letter on the docket. He is again reminded that any further communications with the court MUST be made via motion served on the SEC. Further letters will not be considered for any reason. This order disposes of all claims as to all parties so the clerk shall enter a Rule 58 judgment as follows: Judgment is entered in favor of the SEC and against Mr. Amella. Mr. Amella shall disgorge $39,170 plus $7,980.79 in prejudgment interest plus a civil penalty of $78,340, for a total of $125,490.79. It is further ordered that judgment is entered in favor of the SEC and against Mr. Hayden. Mr. Hayden shall disgorge $34,170 plus $7,515.15 in prejudgment interest plus a civil penalty in the amount of $85,000, for a total of $126,685.15.

■[ For further details see text below.]

# STATEMENT

Defendant Andre Hayden is a securities fraud recidivist. On July 23, 2012, with Mr. Hayden's consent, the court entered a consent judgment that, among other things, permanently enjoined Mr. Hayden from purchasing or selling securities on behalf of others or from acting as a securities broker or dealer. The consent judgment also required Mr. Hayden to pay disgorgement of "ill-gotten gains" plus prejudgment interest and provided that the court would determine whether a civil penalty was appropriate and, if so, the amount. Dkt. 32.

Today, the SEC seeks an award of disgorgement, prejudgment interest, and civil penalty, and for entry of final judgment. In response, Mr. Hayden states that his financial situation is bleak and that this case has caused him to experience significant stress and health problems. He expresses his remorse, and asserts that he lacks sufficient assets to support himself, but would like to repay the commissions he received over time so investors can receive some reimbursement.

For present purposes, the court will accept Mr. Hayden's representations about his financial condition. The court appreciates that Mr. Hayden claims he is virtually destitute. Nevertheless, this fact is not relevant, as his ability to pay a judgment is not germane to whether that judgment should be entered against him in the first place. Moreover, Mr. Hayden has already had the proverbial one bite of the apple, as in *SEC*

(continued)

| | Courtroom Deputy Initials: | TCP/c |
|---|---|---|

*v. Platinum Capital Advocates, et al.*, 07 C 0985 (N.D. Ill.) (Holderman, C.J.), the court enjoined Mr. Hayden from committing a further securities violation but did not order him to pay a civil penalty or prejudgment interest because of his claimed financial distress. As noted by the SEC, six months later, Mr. Hayden participated in a new securities scheme that forms the basis of the securities fraud case before the court.

Mr. Hayden does not contest the SEC's motion on the merits. As a consent judgment has been entered, the issues remaining for the court to decide with respect to Mr. Hayden are the amounts of disgorgement, prejudgment interest, and civil penalties to be imposed. The record supports the SEC's assertion that Mr. Hayden received $34,170 in commissions. In the court's view, equity demands that he disgorge this amount. With respect to prejudgment interest, the consent judgment provides that the IRS underpayment shall be used to calculate the amount owed. The court thus finds that Mr. Hayden is responsible for prejudgment interest in the amount of $7,515.15.

The court next considers if Mr. Hayden should be required to pay a civil penalty. Pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), this court may impose monetary penalties for securities law violations to achieve the dual goals of punishing the violator and deterring future violations. *See SEC v. Jakubowski*, No. 94 C 4539, 1997 WL 598108, at *3 (N.D. Ill. Sept. 19, 1997).

Both civil penalty statutes contain the same three tiers for determining the amount of civil penalties that may be imposed for each violation of the securities laws. The applicable penalty amounts are periodically adjusted for inflation. The third and highest tier applies where the violation (i) "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and (ii) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *See* 15 U.S.C. § 78u(d)(3)(B)(iii).

The court reproduces the SEC's helpful tier chart, which has been adjusted for inflation pursuant to 17 C.F.R. § 201.10034:

| *Tier* | *Maximum Penalty is the Higher of* | *Additional Requirements for Application of 2d and 3d Tiers* |
| --- | --- | --- |
| **First Tier** | (1) $6,500 for a natural person or $65,000 for any other person; or (2) the gross amount of pecuniary gain to such defendant as a result of the violation | n/a |

| | | |
|---|---|---|
| **Second Tier** | (1) $65,000 for a natural person or $325,000 for any other person; or <br> (2) the gross amount of pecuniary gain to such defendant as a result of the violation. | "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." |
| **Third Tier** | (1) $130,000 for a natural person or $650,000 for any other person; or <br> (2) the gross amount of pecuniary gain to such defendant as a result of the violation. | (a) "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" and <br> (b) "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." |

In considering the amount of a penalty, courts may consider the egregiousness of the violations, the degree of defendant's scienter, whether the defendant's conduct created a substantial loss or the risk of substantial losses, whether the defendant's conduct was isolated or recurring, and whether the penalty should be reduced because of defendant's demonstrated current and future financial condition. *S.E.C. v. Pentagon Capital Management PLC*, No. 08 CIV. 3324, 2012 WL 1036087, at *2 (S.D.N.Y. Mar. 28, 2012).

The court finds that Mr. Hayden's conduct clearly falls into the third tier. *See* 15 U.S.C. § 78u(d)(3)(B)(iii). Critically, the scheme in this case was not Mr. Hayden's first brush with securities fraud as the actions in this case were taken in violation of an order entered a mere six months earlier in *SEC v. Platinum Capital Advocates*. He either knew or should have known that his actions were improper given the first case and permanent injunction. Next, investors lost approximately $450,000. Moreover, the conduct at issue is unquestionably not an isolated incident given the existence of the prior case against Mr. Hayden, *SEC v. Platinum Capital Advocates*. Last, while the court must "consider[], to some extent, [Mr. Hayden's] inability to pay a judgment," his current financial state does not mean he can continue to escape facing the SEC's enforcement efforts and dealing with the consequences of his actions. In *SEC v. Platinum Capital Advocates*, the court declined to impose a civil penalty or order Mr. Hayden to pay prejudgment interest because of his financial position. Instead of using that opportunity to cleave to a law-abiding life, Mr. Hayden promptly proceeded to revert to his old ways and participate in another scheme. The entry of another permanent injunction without a meaningful civil penalty would be an affront to the investing public. In its discretion, the court thus imposes a civil penalty in the amount of $85,000. This amount is based on the statute, the need to impose a substantial penalty in light of the egregious nature of the conduct in this case, the amount of loss to the investors, and the fact that Mr. Hayden has already been required to disgorge the $34,170 he received in commissions. The court also notes that Mr. Hayden's co-defendant entered into a settlement which required him to pay $78,340 in civil penalties to the

SEC. Mr. Hayden, on the other hand, opposed the SEC's request for a civil penalty and even today, claims that he was "totally misled" by others and had no culpability in the scheme when he was unequivocally and completely prohibited from taking part in the sale of securities in the first place. *See* Mr. Hayden's November 19, 2012, letter; Dkt. 55-1 (judgment against Mr. Hayden in *SEC v. Platinum Capital*).

Accordingly, the SEC's motion for an award of disgorgement, prejudgment interest, and civil penalty, and for entry of final judgment [47] is granted and final judgment in favor of the SEC and against Mr. Hayden as follows:

**I.**

It is hereby ordered, adjudged, and decreed that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Judgment by personal service or otherwise are permanently restrained and enjoined from, directly or indirectly, soliciting existing or potential investors to purchase or sell securities; provided, however, nothing herein shall prevent Defendant from purchasing or selling securities for his own account.

**II.**

It is hereby further ordered, adjudged, and decreed that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)(1)], by engaging in business as a broker or dealer, and effecting any transactions in, or inducing the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills), through the use of the mails or any instrumentality of interstate commerce, while not being registered as a broker dealer in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)] or while not being associated with a broker or dealer that is registered with the Commission in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)].

Nothing in this section is intended to limit, modify, amend, or otherwise affect in any manner the terms or scope of the injunction set forth in Section I, above. Thus, even if Defendant, his agents, servants, employees, or other persons in active concert or participation with any of them act in compliance with Section 15(a)(1) of the Exchange Act, they remain permanently restrained and enjoined from, directly or indirectly, soliciting existing or potential investors to purchase or sell securities as set forth in Section I, above.

**III.**

It is hereby further ordered, adjudged, and decreed that Defendant is liable for

disgorgement of $34,170, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $7,515.15, and a civil penalty in the amount of $85,000 pursuant to Section 20(d) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. Defendant shall satisfy this obligation by paying the total amount of $126,685.15 to the Securities and Exchange Commission within 28 days after entry of this Final Judgment. Defendant may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account or by credit or debit card via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to:

Enterprise Services Center Accounts Receivable Branch
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Andre J. Hayden as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Defendant relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant.

The Commission may enforce the Court's judgment for disgorgement, prejudgment interest and civil penalty by moving for civil contempt (and/or through other collection procedures authorized by law) at any time after such payments become due following entry of this Final Judgment.
Defendant shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961. The Commission shall hold the funds, together with any interest and income earned thereon (collectively, the "Fund"), pending further order of the Court.

The Commission may propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that the Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. The Court shall retain jurisdiction over the administration of any distribution of the Fund. If the Commission staff determines that the Fund will not be distributed, the Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury.

Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty,

Defendant shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant's payment of disgorgement in this action, argue that he is entitled to, nor shall he further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendant's payment of a civil penalty in this action ("Penalty Offset").  If the court in any Related Investor Action grants such a Penalty Offset, Defendant shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs.  Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this Judgment.  For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Defendant by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

**IV.**

It is further ordered, adjudged, and decreed that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

**V.**

It is further ordered, adjudged, and decreed that this court shall retain jurisdiction to enforce the terms of this judgment.